UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 17-cr-10305-ADB |
| ) | |
| JOSEPH BAPTISTE ) | |
| ) | |
| and ) | |
| ) | |
| ROGER RICHARD BONCY, ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S MOTION FOR A FINDING OF WAIVER OF CONFRONTATION BY DEFENDANT BONCY AND TO PRECLUDE CROSS-EXAMINATION DESIGNED TO ELICIT TESTIMONY THAT WOULD VIOLATE THE COURT'S ORDER ON THE ADMISSIBILITY OF DEFENDANT BAPTISTE'S PLEA STATEMENTS**

The government respectfully requests, first, that this Court rule that, through counsel's cross-examination of an undercover agent on June 14, 2019, Defendant Richard Boncy waived the protection of *Bruton v. United States*, 391 U.S. 123 (1968), as to Defendant Joseph Baptiste's statement on December 29, 2015 that he conspired with Boncy to bribe a Haitian official. Second, the government respectfully renews its request that this Court preclude Boncy's counsel from pursuing lines of cross-examination concerning Baptiste's cooperation and the ongoing undercover operation in June 2016 and thereafter. Such cross-examination will require the testifying government witness either to violate this Court's order on Baptiste's sworn plea statement and plea agreement or to provide incomplete answers to the jury.

**ARGUMENT**

**I.    Boncy Has Waived The Right Of Confrontation As To Baptiste.**

Through counsel, Boncy waived the protection of *Bruton* by questioning a government witness about Boncy's status in the FBI's investigation after December 19, 2015. Under

1

*Cruzado v. Puerto Rico*, counsel can waive an accused's right of confrontation by pursuing an informed trial strategy in the accused's presence and on his behalf.  210 F.2d 789, 791 (1st Cir. 1954); *see also Janosky v. St. Amand*, 594 F.3d 39, 48 (1st Cir. 2010) ("[C]ounsel may waive his client's right of confrontation 'so long as the defendant does not dissent . . . and so long as it can be said that the attorney's decision was . . . part of a prudent trial strategy'" (quoting *United States v. Stephens*, 609 F.2d 230, 232-33 (5th Cir. 1980)).  The following is an excerpt of the questioning of the undercover agent by Boncy's counsel:

> Q. What you were investigating was bribery in foreign countries, correct?
>
> A. Yes.
>
> Q. Okay.  Mr. Boncy had said something that was completely different than the heart of your investigation, correct?
>
> A. He said something different.  That's what I can testify to.
>
> Q. Okay.  And the very next day you're asking for projects that Richard's not involved in, correct?
>
> A. I asked to discuss projects, and I want to know if Richard is involved with them.
>
> Q. Isn't it true, Special Agent, you're trying to cut him out because it appears he's not in on the conspiracy?
>
> A. No.

Through these questions, Boncy's counsel tried to suggest to the jury that Boncy's statements on December 19, 2015 somehow changed the government's view of Boncy's involvement in the conspiracy to pay bribes in relation to the Port Project.  Boncy's counsel has now put at issue the government's view of Boncy after December 19, 2015.

Based on the interview report ("302") from the FBI's meeting with Baptiste in Miami on December 29, 2015—which Boncy received in automatic discovery in December 2018— Boncy's counsel knew that the FBI confirmed Boncy's involvement in the conspiracy when they spoke with Baptiste in Miami.  Specifically, the Miami 302 contains the following statement:

>BAPTISTE admitted that he offered ABELLARD a job with HISPANIOLA
>INVEST once he had left the PM's office.  BAPTISTE also admitted that prior to
>encountering ABELLARD in the course of trying to obtain the letter of support,
>he had not considered offering ABELLARD a job on the project.  BAPTISTE
>admitted that he offered ABELLARD the job so ABELLARD would approve the
>letter and not delay it in the approval process.  BAPTISTE also admitted that he
>called BONCY had a discussion with BONCY about offering ABELLARD a job.
>During that call, BAPTISTE suggested offering ABELLARD a job to convince
>ABELLARD to help them secure the letter, and BONCY agreed with BAPTISTE.
>BAPTISTE then called ABELLARD and made the offer, and ABELLARD
>accepted.

In obtaining this information from Baptiste on December 29, 2015, the FBI clearly demonstrated that it regarded the heart of investigation to include Boncy's explicit agreement to offer a thing of value to Abellard in order to obtain his and the Prime Minister's support for the Port Project.[1]

Usually, *Bruton* would prohibit the government from eliciting this information, and accordingly, as the Court is aware from the motion practice about Baptiste's sworn statement, the government did not intend to offer any of Baptiste's out-of-court testimonial statements about Boncy.  Now, however, Boncy's counsel has opened the door, and the Court should allow the government to rebut counsel's insinuations with the clear evidence that after December 19, 2015, the government did not change its view of Boncy's role in the conspiracy.  The alternative is that Boncy will be able to use the right of confrontation as a sword and a shield and effectively mislead the jury about the FBI's conclusions regarding the December 19, 2015 calls.  *See United States v. Lopez-Medina*, 596 F.3d 716, 733 (10th Cir. 2010) ("[S]ubsequent to *Crawford*, there is no Confrontation Clause violation when the defendant opens the door to the admission of hearsay testimony.") (collecting cases); *Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir. 2011)

---

[1] The government reasonably expects that Boncy's counsel will pursue a similar line of questioning with Special Agent Garett Trombly.  In that instance, the government would seek to use Trombly's Miami 302 pursuant to Federal Rule of Evidence 801(d)(1)(B).  The Court should not wait for this eventuality to rule.  Boncy's counsel has already left a misleading impression with the jury that the government should be allowed to rebut.

("[I]nadmissible hearsay evidence may be offered to impeach the defendant on a topic to which he has opened the door, and no violation of the Confrontation Clause arises"); *United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007) (no Confrontation Clause violation where defense counsel opened the door by asking the witness on cross-examination the basis for his suspicions about defendant); *United States v. Chance*, 306 F.3d 356, 385 (6th Cir. 2002) ("[W]here one party has 'opened the door' on an issue, the opponent, in the trial court's discretion, may introduce evidence on the same issue to rebut any false impression that may have been created by the earlier admission of evidence.'").

### II. The Court Should Preclude Cross-Examination That Necessarily Calls For Answers In Violation of This Court's Order About Baptiste's Plea Statements.

The government now renews its request that this Court preclude the defendants from cross-examining government witnesses about the governments' ongoing investigation of bribery in Haiti in 2016 and 2017 and about Baptiste's cooperation with that investigation. Such questioning will necessarily cause government witnesses either to violate this Court's order regarding the admissibility of Baptiste's plea statements or to provide partial and therefore inaccurate answers. The Court should not allow the defendants to use Rule 410 as a sword and a shield.

At the evidentiary hearing on June 7, 2019, Boncy's counsel questions Special Agent Trombly about his activity in this case in June 2016.

> Q. Did you take action to see what was still up there on the server?
>
> A. No. I didn't understand that as a necessary step, and the investigation was ongoing.
>
> Q. In Norfolk you had done this. You had downloaded on this same system in Norfolk?

> A. Yes. The collection event was similar to a wire is when the period of collections is over, you collect everything on one disk and then pass it to ELSUR for local preservation.
>
> Q. In June of 2016 you became the user of this system, is that right, the authorized user?
>
> A. In June 2016, yes, that's my understanding.
>
> Q. How did you become the authorized user?
>
> A. I don't recall the specific steps that I took.
>
> Q. What did you do when you became the authorized user?
>
> A. I believe that I logged in to check whether a call made to me by Peter as a test of the system had been captured.
>
> Q. Okay.
>
> A. Like a system check.
>
> Q. But you have to download it to do that, right?
>
> A. No.
>
> Q. No?
>
> A. No.
>
> Q. What do you do?
>
> A. I believe at the time the way the system was configured, you could just log in and look at the most recent line, the record, which would have been identifiable as my telephone number on -- within -- I forget which day I did it. But whatever day I logged in.
>
> Q. So you just saw if the call was there. You didn't actually listen to the call?
>
> A. Peter and I didn't have a conversation on the system, or at least not one of any length or anything worth reviewing.
>
> Q. But you said you logged in to see if a call that Peter had made to you was on the system, right?
>
> A. Yeah. Correct.

In fact, the investigation of bribery in Haiti was ongoing in June 2016. The undercover operation, with Baptiste's cooperation, had established contact with other subjects. The "Peter

A" consensual recording account was part of that ongoing investigation. The ongoing investigation was then transferred to other agents and another FBI field office. It was in the context of that ongoing investigation that Baptiste stopped cooperating.

If, at trial, Boncy's counsel were to pursue questioning such as that excerpted above and thus leave the jury with the impression that the FBI investigation had concluded by June 2016, the government would be compelled to ask the testifying agent why he believed that the investigation was ongoing, what was happening in June 2016 that accounts for his use of the consensual recording system at that time, and why he continued to believe that the consensual recording system account for undercover agent "Peter Anderson" might be used later in 2016. Answers to all of those questions involve knowledge of Baptiste's plea agreement and his subsequent cooperation with the United States. If the testifying agent is not allowed to explain, the jury will be misled regarding his intent and knowledge and regarding the context for the FBI's inadvertent loss of the calls that had been preserved on the consensual monitoring system in December 2015.

For the above stated reasons, the government requests that the Court rule that Boncy has waived the right of confrontation as to Baptiste's statements on December 29, 2015 and preclude the defendants from using Rule 410 as a sword and a shield.

Dated: June 16, 2019

Respectfully submitted,
ANDREW E. LELLING
United States Attorney

By:  /s/Kriss Basil
KRISS BASIL, BBO# 673074
Assistant United States Attorney
John Joseph Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Tel: (617) 748-3100
kriss.basil@usdoj.gov

>ROBERT ZINK
>ACTING CHIEF, FRAUD SECTION
>
>ELINA A. RUBIN-SMITH
>TRIAL ATTORNEY
>1400 New York Avenue, NW
>Washington, D.C. 20005
>Tel:  (202) 616-1617
>elina.rubin-smith@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>/s/Kriss Basil
>Kriss Basil