**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 17-cr-10305-ADB |
| JOSEPH BAPTISTE | |
| and | |
| ROGER RICHARD BONCY | |
| Defendants | |

## <u>GOVERNMENT'S TRIAL BRIEF</u>

Defendants Joseph Baptiste ("Baptiste") and Roger Richard Boncy ("Boncy") are charged with conspiring, in violation of 18 U.S.C. § 371, to violate the Travel Act, 18 U.S.C. § 1952, and the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2. Baptiste is also charged with one count of violating the Travel Act, 18 U.S.C. § 1952, and one count of conspiracy to commit international money laundering, in violation of 18 U.S.C. § 1956(h).[1] The trial is scheduled to begin on July 5, 2022. Based upon the prior trial of this matter, the government expects the case to take approximately 10 trial days.[2]

## I.    <u>Summary of the Case</u>

The defendant Baptiste, a United States citizen, was a dentist, with a practice in Maryland. Formerly, he served in the United States Army, also as a dentist, and he held the rank of colonel.

---

[1] The Superseding Indictment includes Travel Act and money laundering forfeiture allegations.
[2] At trial, the government will be represented by Department of Justice Trial Attorneys Katherine Raut and Anthony Scarpelli, both of the Fraud Section (Foreign Corrupt Practices Act Unit) of the Criminal Division of the Department of Justice, and Assistant U.S. Attorney Kriss Basil, of the U.S. Attorney's Office for the District of Massachusetts, Securities, Financial and Cyber Fraud Unit.

The defendant Boncy, a United States citizen, was formerly a lawyer and a corporate executive in the United States.  At the time of the conduct discussed herein, Boncy lived in Spain.

By no later than 2014, Baptiste and Boncy were officers in an entity called Haiti Invest LLC/Hispaniola Invest ("Haiti Invest").  Boncy was the chief executive officer, and Baptiste was a director.  Haiti Invest proposed to develop a transshipment port on the Môle St. Nicolas peninsula in northern Haiti (the "Port Project").  As phase one of the Port Project, Haiti Invest planned to develop a cement plant in Haiti, located close to Port-au-Prince.

In 2014, Haiti Invest had a preliminary agreement with a Swiss company to partner in the development and operation of the cement plant; however, by October 2014, the Port Project, including the associated cement plant project, stalled out.

In November 2014, Baptiste met in Boston with an undercover agent from the Federal Bureau of Investigation ("FBI") who was posing as a prospective investor ("UC-1") and a confidential human source ("CHS"), an individual Baptiste knew who also had business interests in Haiti.  During the meeting, Baptiste pitched the Port Project to UC-1, and Baptiste explained that to obtain approvals for the project from Haitian officials, Baptiste was prepared to pay bribes, which he referred to at times, including during this meeting, as "tips," to Haitian officials and to use his charity, the National Organization for the Advancement of Haitians ("NOAH") as a vehicle for the bribe payments.

In February 2015, Baptiste told the CHS that the Port Project was stalled because he lacked money to give to members of the Haitian government, including the Haitian Minister of Finance, for "personal use."

In October 2015, Boncy sent UC-1 information about the Port Project, including the cement plant.  Boncy explained that Haiti Invest had an agreement with the Swiss company and had obtained a letter from Haiti's Prime Minister assuring Haiti Invest that "all permits required will

be granted speedily."  Boncy attached to his correspondence a copy of a letter, dated August 23, 2012, from then Prime Minister Laurent Lamothe, assuring Haiti Invest that Haiti government agencies would support Haiti Invest's plans to develop the cement plant portion of the Port Project.

In November 2015, Baptiste, Boncy, and a co-conspirator (CC-1) travelled to Boston to meet with UC-1 and a second undercover agent ("UC-2"), both of whom pretended to be potential investors in the Port Project and specifically in the cement plant.  At the meeting, Baptiste, Boncy, and CC-1 discussed the circumstances in which bribes could be paid to ensure governmental and private party assistance in development of the cement plant.  Baptiste, Boncy, and CC-1 discussed the allocation of 5 percent of the budget that could be used to pay "unforeseen expenses," and CC-1 noted that such payments could be a "cash cost today" or an "entry . . . in equity" in the project for government officials and possibly for political candidates who would be "instrumental" in obtaining government approvals.

Following the meeting, Baptiste communicated by phone with his brother, CC-2, in Haiti about setting up a bank account for Baptiste's non-profit so that Baptiste could more easily access money in Haiti to pay bribes.

Boncy and Baptiste also conferred by phone about offering employment and business contracts to senior Haitian officials to obtain their support for the Port Project.  Later, after obtaining Boncy's permission, Baptiste offered a position on the Port Project to an aide to a senior Haitian official to secure the aide's assistance, and the aide accepted the offer.

On other phone calls about the Port Project, Boncy and Baptiste discussed payments to lower level Haitian officials in order to maintain Haiti Invest's access to the higher levels of the Haitian government.

Contemporaneously, Baptiste requested and obtained $50,000 from the undercover FBI agents purportedly to pay bribes and directed them to make the payments as donations to his

charity.  Baptiste told the undercover FBI agents that he had been using and would use the money to pay bribes to Haitian government officials.  However, Baptiste also told UC-2 that Haiti Invest would hire Haitian officials, including the Prime Minister, as consultants to remove roadblocks to the development of the Port Project.

On or about December 12, 2015, Baptiste and Boncy explicitly agreed that they would use consulting agreements as part of their scheme.  In Baptiste's words, "With that budget now, with that budget, we are going, [to] make sure that everything we need from the government, we have it.  Any license, anything we need, we will hire them as consultants to get this license."  Boncy laughed, agreed, and acknowledged that they were discussing the Haitian Prime Minister. Thereafter, on or about December 22, 2015, Boncy directed Baptiste to obtain three permits from the Haitian government.  Baptiste responded that he would call to get the Haitian Prime Minister's approvals.

The FBI confronted Baptiste in late December 2015.  At that time, Baptiste had not spent money from the NOAH account to pay bribes; he had used that money to pay expenses and to buy gifts.  The conspiracy ended when the FBI confronted Baptiste.

## II.    Evidence

The government expects to present essentially the same evidence that it presented in the first trial of this case in June 2019.  Specifically, it principally will prove its case using recorded statements by the defendants and their co-conspirators.  The government anticipates calling multiple FBI agents as witnesses to introduce, to authenticate, or to testify about these statements.[3] The government does not propose to have agents interpret the meaning of statements in conversations in which they did not participate.  However, the government will ask agents about

---

[3] The United States will seek to introduce the substance of intercepts of calls that have been transcribed into English from Haitian Creole using Haitian Creole interpreters.

their understanding of conversations in which they directly participated.

The first two anticipated FBI agent witnesses, UC-1 and UC-2, conducted the undercover investigation.  They will testify about their interactions with Baptiste, Boncy, and their co-conspirators.  They will introduce and authenticate numerous intercepted phone calls with Baptiste and between Baptiste, Boncy, their co-conspirators and others, as well as audio and video recordings of meetings with Baptiste and Boncy in Boston, during which Baptiste explained the bribery scheme.  Additionally, the undercover agents will authenticate emails they exchanged with Baptiste, Boncy, and their co-conspirators about the Port Project and bribery scheme.

UC-1 will testify regarding his initial meeting with Baptiste in Boston in November 2014 and will authenticate an audio recording of Baptiste.  On that recording, Baptiste describes the use of bribes as part of the Port Project and explains how he can use his non-profit to move funds for bribes covertly.  UC-1 will also testify about arranging a meeting between Baptiste, Boncy, CC-1, and UC-2 in Boston in November 2015.

UC-2 will testify about the meeting in November 2015 and authenticate audio and video recordings of Baptiste, Boncy, and CC-1.[4]  On those recordings, Baptiste describes how he and his co-conspirators will ensure the success of the Port Project in Haiti by paying bribes to Haitian government officials.  UC-2 will also authenticate several recorded telephone calls, during which Baptiste further discusses his plans to bribe Haitian officials, solicits funds from UC-2 to pay bribes, and updates UC-2 about his progress in meeting and obtaining access to Haitian government officials.

---

[4] The Government will request stipulations related to chain of custody and authenticity from the defendants.  Those stipulations could reduce the number of witnesses the Government will call and shorten the trial.

Other FBI agents or personnel will authenticate recordings of Baptiste speaking by phone with persons in Haiti, and elsewhere.  These recordings include calls with CC-2, with whom Baptiste coordinated the establishment of bank accounts in Haiti to facilitate the movement of bribe money from the United States to Haiti.  The recordings also include calls between Boncy and Baptiste about putting senior Haitian officials on the Port Project's payroll in order to secure the support of the Haitian government.

An FBI agent who interviewed Baptiste on December 29, 2015, January 4, 2016, and January 11, 2016, will testify regarding Baptiste's statements about his efforts to obtain bribe money, his relationship to his co-conspirators, and his efforts to bribe Haitian government officials in connection with the Port Project.

## III.   **The Charges**

### A.     **Conspiracy, 18 U.S.C. § 371**

Count One of the Superseding Indictment charges Baptiste and Boncy with conspiracy in violation of 18 U.S.C. § 371.  The conspiracy had two unlawful purposes.  The first was to violate the Travel Act by travelling interstate with the intent to promote, manage, establish, or carry on a scheme to pay bribes in relation to the Port Project in violation of the laws of the United States. The second purpose was to violate the FCPA by using the instrumentalities of interstate commerce in furtherance of bribes to Haitian government officials in relation to the Port Project.

To convict the defendants of conspiracy as charged in the Superseding Indictment, the government must prove (1) the existence of an agreement between at least two persons to commit a violation of the Travel Act or of the FCPA; (2) the defendants' voluntary and knowing participation in the conspiracy; and (3) an overt act committed in furtherance of either prong of the conspiracy.  *See United States v. Acevedo-Hernández*, 898 F.3d 150, 161 (1st Cir. 2018) (citing *United States v. Ngige*, 780 F.3d 497, 503 (1st Cir. 2015)).  An agreement may be express or tacit

and may be proven directly or circumstantially.  *Id*. (*citing United States v. McDonough*, 727 F.3d 143, 156 (1st Cir. 2013).  Co-conspirators need not know all the details of the conspiracy or participate in every act in furtherance of it.  *Id*.  Where, as here, the defendants are charged as part of a conspiracy to commit multiple offenses, they can be convicted if there is sufficient evidence of conspiracy to commit any one of the offenses.  *United States v. Munoz-Franco*, 487 F.3d 25, 46 (1st Cir. 2007) (*citing Griffin v. United States*, 502 U.S. 46, 56-57 (1991)).

### B.    Travel Act

Count Two of the Superseding Indictment charges Baptiste with violating the Travel Act, 18 U.S.C. § 1952(a)(3), by traveling from Maryland to Massachusetts in furtherance of bribery, in violation of the FCPA, 15 U.S.C. § 78dd-2(a)(3).

To convict Baptiste of violating the Travel Act, the government must prove (1) interstate travel or use of an interstate facility; (2) with the intent to promote, manage, establish, carry on, or facilitate an unlawful activity; (3) followed by performance or attempted performance of acts in furtherance of the unlawful activity.  *United States v. Escobar-de Jesus*, 187 F.3d 148, 177 (1st Cir. 1999) (citations omitted).  Title 18 U.S.C. § 1952(b) defines unlawful activity to include bribery in violation of a law of the United States, here the FCPA.

### C.    Money Laundering Conspiracy

Count Three of the Superseding Indictment charges Baptiste with one count of conspiracy to engage in international money laundering, in violation of 18 U.S.C. § 1956(h).  Specifically, Baptiste is charged with conspiring to transfer funds from the United States to Haiti with the intent to promote the bribery scheme by using the money to bribe Haitian officials in violation of the FCPA.

To convict Baptiste under 18 U.S.C. § 1956(h), the government must prove that the defendant agreed with one or more co-conspirators: (a) knowingly to transmit or transfer or attempt

to transmit or transfer funds (b) from inside the United States to a place outside the United States (c) with the intent to further the bribery of foreign officials in violation of the FCPA.  *See United States v. Mangual-Santiago*, 562 F.3d 411, 428 (1st Cir. 2009).  The government must prove that Baptiste possessed the mental state required for the substantive offense under 18 U.S.C. § 1956(a)(2)(A).  *See United States v. Cedeno-Perez*, 579 F.3d 54, 58 n.4 (1st Cir. 2009) (citing *United States v. Corchado-Peralta*, 318 F.3d 255, 257, 258 n.2 (1st Cir. 2003)).  The government does not need to prove an overt act to obtain a conviction under 18 U.S.C. § 1956(h).  *Whitfield v. United States*, 543 U.S. 209, 219 (2005).

## IV.   <u>Evidentiary Issues</u>

### A.   **Motions *In Limine***

The government has separately filed six motions *in limine*.

First, the government moves to preclude arguments in support of jury nullification, including the arguments that corrupt practices abroad are so widespread in Haiti that the defendants should not be found guilty; that investment in Haiti is a social good that excuses bribery; and that seek to inflame the jury by attacking the government's investigative methods.

Second, the government moves to preclude the defendants from making arguments that sound in the theory of entrapment.

Third, the government moves to preclude the defendants from using self-serving hearsay statements.

Fourth, the government moves to preclude evidence or argument as to the Port Project's alleged public benefit.

Fifth, the government moves to preclude inadmissible evidence of prior "good acts" or non-commission of other bad acts.

Sixth, the government moves to pre-authenticate certain provider records, a motion which the Court granted in advance of the first trial.

### B.     Foreign Language Transcripts

The United States intends to authenticate and to offer several English-language translations of telephone conversations between Baptiste and Boncy, as well as with third parties, including co-conspirators, in Haitian Creole.  The United States has produced copies of all foreign language transcripts to the defendants.  The government's translator is reviewing the transcripts to ensure accuracy, and the United States will promptly produced any edits he makes.

### V.     <u>Conclusion</u>

Although the foregoing does not exhaust all the issues that may be presented at trial, it is submitted to assist the Court and to present the position of the United States with respect to the above matters.  The Government can provide any additional information at the Court's request.

Dated: June 10, 2022

Respectfully submitted,


RACHAEL S. ROLLINS
United States Attorney

By:     /s/*Kriss Basil*_____
KRISS BASIL
Assistant United States Attorney
John Joseph Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
Tel:  (617) 748-3100
kriss.basil@usdoj.gov


JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION

By:     /s/*Katherine A. Raut*_____

KATHERINE RAUT
ANTHONY SCARPELLI
Trial Attorneys
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Tel:  (202) 262-2637
katherine.raut@usdoj.gov
anthony.scarpelli2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/*Katherine A. Raut*</u>
Katherine Raut
Trial Attorney