UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )          No. 17-cr-10305-ADB |
| | ) |
| | ) |
| | ) |
| ROGER RICHARD BONCY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## Defendant Richard Boncy's Motion to Dismiss for Additional Destruction of Evidence or, In the Alternative, A Request for an Evidentiary Hearing

Defendant Richard Boncy, through undersigned counsel, and as more fully explained below, moves this Court to dismiss the sole remaining charge against Mr. Boncy based on the government's conduct related to newly disclosed evidence of the destruction of a disk alleged to have contained the only remaining evidence of certain exculpatory calls with Mr. Boncy, or, in the alternative, grant an evidentiary hearing on this issue.

## Introduction

It is no secret that the government destroyed two recordings of Mr. Boncy with an FBI undercover agent – recordings of a defendant's statement, which are classic Rule 16 evidence. Indeed, the government has admitted that is the case.  It is also no secret that Mr. Boncy has maintained throughout this matter that the two destroyed recordings, which occurred on December 19, 2015, were exculpatory.  Mr. Boncy has maintained that in the recorded calls, his questions and lack of understanding of the charged scheme demonstrated that Mr. Boncy lacked the necessary understanding of the charged conspiracy – or that such a conspiracy ever existed between Mr. Boncy and Dr. Baptiste.  And as the Court noted at the end of the prior trial in this

1

matter, Mr. Boncy's exculpatory claim was indeed "colorable."  It is also no secret that the FBI destroyed these calls, although they have maintained that it was a mistake.

But now – just weeks before trial, years after Mr. Boncy requested the evidence from the government, and only after filing a motion to compel – the government has for the first time ever informed Mr. Boncy that significant, material evidence of the alleged call destruction is gone. More specifically, a disk that purportedly contained the recovered contents of the hard drive that once contained the calls is now gone.  Destroyed.

Mr. Boncy is once again unable to test the government's actions in collecting the evidence, in crossing witnesses, testing the contents of the disk, or even listening to the contents of the disk. The government's explanation, offered two-and-half weeks before trial, is that they destroyed the evidence because they unilaterally determined that "the disk did not contain evidence or content" – even though it contained 172 wave files, had been collected in connection with this case, and the collection was undertaken *after* Mr. Boncy had made written discovery demands regarding the lost calls. This conduct cannot be condoned, and the case should be dismissed.

## Background

In pre-indictment discussions with the DOJ, Mr. Boncy referenced an exculpatory call or calls with the one of the FBI undercovers.  These calls occurred on December 19, 2015. Presumably these calls were recorded on the FBI's undercover consensual recording system. After Mr. Boncy's indictment and self surrender from Spain, the government advised that it was *not* in possession of the calls.  They indicated that in a footnote in the automatic discovery letter, dated November 29, 2018.  Within days and since that time, as detailed below, Mr. Boncy, through counsel, has repeatedly sought information and evidence regarding what happened to the calls and the government's conduct in relation to the calls.  For example:

- On December 3, 2018, in an email, counsel for Mr. Boncy stated: "[I]in your discovery letter you indicate that the government is not "in possession" of a call between a UC and my client, Richard Boncy, on or about 12/19/2015, that is subsequently referenced on a call with Baptiste and the UC.  See n. 1, p. 3.  I need a better explanation on this.  Are you saying that the recording is not in the government's possession?  Are you saying that the call did not occur?  Or did the call occur, and the government did not record it or lost the recording?  Please provide further explanation."

- On December 7, 2018, the government responded that  "as to your question regarding the call between UC-2 and Boncy on 12/19/2015, we believe Boncy and UC-2 spoke by phone on 12/19/2015. Boncy's phone was not subject to the wire. Therefore, the FBI used a consensual telephonic monitoring system to record the call on 12/19/2015.  The FBI's system currently shows that there were two successful connections on 12/19/2015 with Boncy's phone number, at 3:42 ET and 3:56 ET. Two audio ".wav" files were created by these connections. These two audio files inadvertently were not downloaded by the FBI.  Because the retention policy for this system is 30-60 days from the date of the call, the audio files are no longer accessible/recoverable. The existing record of the audio files does not include their length. Call logs show that UC-2 had two phone calls with Boncy on 12/19/2015. Based on those logs, we believe that the first call lasted approximately 11 minutes, and the second call, which started approximately three minutes after the first call ended, lasted approximately 29 minutes."

- On January 29, 2019, counsel for Mr. Boncy sent an extensive discovery demand to the government that sought evidence related to the destroyed calls.  A copy of that letter is attached hereto as Exhibit A.

The government's disclosures in 2018 and 2019 related to the requested evidence on the calls were limited.  Mr. Boncy received a log showing that the calls occurred and some paperwork related to the shipment of a device, but not much else. No 302s, no reports, no emails, no text messages.  Mr. Boncy received nothing of any substance.

Faced with the destruction of exculpatory evidence and no way to recreate the evidence, Mr. Boncy filed a motion to dismiss.  (D.E. 123.).  On June 7, 2019, the Court conducted an evidentiary hearing on the motion to dismiss.  (D.E. 216, Transcript of Evidentiary Hearing as to Joseph Baptiste, Roger Richard Boncy held on June 7, 2019.)  At that hearing, the lead case agent testified that he had been alerted to the missing calls by the assigned AUSA in October of 2018.

(D.E. 216, p. 89.)  After that conversation, the agent testified that he went and checked the local

FBI system to see if the calls were there.  (D.E. 216, p. 89.)  The agent further explained:

> When I first logged in, I attempted to download them. And when that failed, I went to the local personnel who administer the local version of the system and asked for help. My understanding is that they communicated down to Quantico to have them check if the files were available on their servers. When we got that negative answer, over an ensuing time, I'm not sure precisely when, I learned that, in fact, as supervising Special Agent King testified, a local copy was delivered to the local machine, which we then tried to examine for the calls. That was negative.

> But then we found out that the machine in place in 2018 was not the same one that was in 2015. So we set about trying to find that machine, which we did. **It was shipped back to us from Quantico where it was -- a computer specialist in Boston examined it for all audio files and gave me a disk of those**. I reviewed every one of them, and there was no fragment or complete record of anything pertaining to this or any other investigation.

(D.E. 216, p. 91.)

As of May 2022, the government has never produced the disk that the agent testified to

receiving.  Nor has the government identified the computer specialist in Boston.  Accordingly, in

correspondence dated May 16, 2022, Mr. Boncy, through counsel, and with regard to the

problematic computer, requested: (1) documents, to include internal reports, evidence records,

emails, text messages related to this issue and/or its transfer; (2) any all documents related to the

make and type of the malfunctioning Boston computer; (3) all witnesses (besides King) that could

testify to the unspecified problems; and (4) any and all documents related to any replacement

computers and/or repairs conducted on the malfunctioning computer.  In addition, with regard to

the hearing testimony, Counsel also requested: (1) all communications or documents relating to

this process, to include a list of recovered files; (2) the name of the agent or personnel that retrieved

the files from the malfunctioning computer; and (3) a copy of the disk that was provided to the

agent.

The government produced some limited documents and the name of one person involved. However, by June 8, 2022, the government had produced no reports, no emails, no text messages, and most importantly, the government had not produced the disk at issue.  Accordingly, counsel for Mr. Boncy filed a motion to compel.  (D.E. 354.).  On June 9, 2022, at a regularly scheduled hearing before the Court, the motion to compel was discussed, and the government advised the court that they were continuing to track down the disk.  (D.E. 355.)

Thereafter, a letter dated June 15, 2022, the government advised that – contrary to the Special Agent's sworn testimony – he never received a disk of calls.  Instead, according to the government:

> [FBI Employee 1],[1] a then-FBI computer scientist, examined the hard drive to identify any audio files that fell within the relevant time period or were the relevant file type, and created a disk of the audio files, which he provided to an FBI operational support technician, [FBI Employee 2].[2] Neither [FBI Employee 1 nor FBI Employee 2] generated any memoranda or reports regarding the disk. On February 22, 2019, [FBI Employee 2 transmitted to [the case agent] a list of the filenames of the 172 recovered audio files on the disk, . . .  [FBI Employee 2] kept possession of the disk, and with [the case agent], she reviewed the audio files extracted by [FBI Employee 1] at her work station in the FBI Boston Field Office. . . . ***Because the disk did not contain evidence or content, it does not appear a copy of the disk was maintained. [FBI Employee 2] did not specifically recall what was done with the disk***, but believed she did not maintain it. She noted that if it had been maintained, it likely would have been located at her work station, which it was not.

(Emphasis added.)

The government provided no more information except for a paper list of the files (and an accompanying email) that were allegedly on the disc.  The document, however, has been scrubbed of metadata.  Additionally, the FBI provided no emails or texts relating to what was apparently a weeks-long exercise, which involved at least three FBI employees.   The lack of production and the length of time it took to respond to Mr. Boncy's request is troubling.  And, notably, when the

---

[1] FBI Employee 1 is apparently no longer employed by the FBI.
[2] FBI Employee 2 is a current employee of the FBI.

newly disclosed evidence is compared to the timeline of demands, it appears that the FBI was engaged in this exercise just a few weeks after Mr. Boncy's discovery demand letter had been sent in January of 2019, which was the second request for information.  *See* Exhibit A.  None of this has ever been revealed before the DOJ's letter issued just two days ago.

Further, this is the third version of events related to these calls and the FBI's conduct around the calls.  Initially, in December 2018, the calls were gone because of the applicable retention policy.  (*See* above.)  However, in June of 2019, fragments of the calls existed, there was no mention of the retention policy, and the agent was now (or had been) in possession of the disk.  Today, two and half weeks before trial, the agent never had a disk, and the evidence is lost forever because the FBI did not think it valuable.  The motion should be granted and the case should be dismissed.

## Discussion

Sanctions, including dismissal, are appropriate when "some" reason exists to believe that the lost or destroyed evidence "might materially" have helped the defendant's case.  *See United States v. Kincaid*, 712 F.2d 1, 3 (1st Cir. 1983).  First, the government has an obligation to turn over to a defendant their recorded statement.  *E.g.*, F.R.Cr.P. 16(a)(1)(B).  Second, the government has a constitutional obligation to preserve and provide exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). Indeed, "[i]t is common ground that, upon request, a criminal defendant has a due process right to review all evidence in the government's possession that is material to his guilt or punishment. . . . But this right would be empty if the government could trump it by the simple expedient of destroying evidence harmful to its theory of the case." *Magraw v. Roden*, 743 F.3d 1, 7 (1st Cir. 2014) (internal citations removed). As the First Circuit has indicated, the "the dimensions of a defendant's rights when requested evidence, formerly in the government's

possession, is lost, destroyed, or otherwise unavailable" is defined, in part, by *California v. Trombetta*, 467 U.S. 479 (1984). *Id.*, at 7. "Under *Trombetta*, [the government] violates due process when it fails to preserve irreplaceable evidence possessing exculpatory value that is apparent before its destruction. . . . This precept holds true regardless of why the evidence was destroyed." *Id*. at 7-8. The predicate question, therefore, is whether the destroyed evidence is apparently exculpatory.  If so, the Court must next examine whether the destroyed evidence is irreplaceable.  If the exculpatory evidence is irreplaceable, there is a due process violation. It makes no difference why the government destroyed the evidence. Government negligence or oversight are not a defense. As the First Circuit said in *Magraw*, the due process "precept holds true regardless of why the evidence was destroyed." *Id.*, at 8.5.[3]

Third, in addition to the foregoing, in *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court extended *Trombetta* to hold that when the destroyed evidence is "potentially useful", dismissal is appropriate upon a showing of bad faith.  *Youngblood*, 488 U.S. at 58.  Relying on *Youngblood*, the Tenth Circuit reversed a trail court's denial of a motion to dismiss and remanded the matter to choose the appropriate remedy: either dismiss the prosecution or suppress the government's most probative evidence.  *United States v. Bohl*,  25 F.3d 904, 914 (10th Cir. 1994).

In *Bohl*, the defendants were charged with defrauding the government by using non-conforming materials in the legs of certain radar and radio towers.  *Id.*, at 907. Like here, the defendants in *Bohl* repeatedly sought access to the tower legs for testing to determine whether, in fact, the materials were non-conforming.  *Id.* at 908.  The government, aware of the requests, nevertheless destroyed the tower legs.  After finding that the "actual steel used in the towers was

---

[3] While there is no requirement under *Trombetta* to show the government acted in bad faith, if there were such a requirement, it could easily be established with the appropriate evidentiary hearing. Accordingly, if the Court were to conclude that some showing was necessary, Mr. Boncy respectfully requests an evidentiary hearing to do so.

potentially useful for their defense because their own tests of the steel might have exonerated them", the court assessed whether the destruction was in bad faith.  In finding that the destruction was in bad faith, the court noted, among other things,  that: (1) the government had been on notice that the defendant wanted access to the evidence; (2) their claim that the evidence would be helpful was objectively reasonable; (3) the government had possession of the evidence when it received notice of the defendants' demands; and (4) the government offered no innocent explanation for its conduct.

Here, the result should be the same.  First, the destroyed calls were indeed exculpatory and Mr. Boncy had repeatedly requested the calls and all evidence around their destruction since the start of this prosecution.  With regard to the exculpatory nature of the calls, to paraphrase an undercover's recitation of the charged scheme, the heart of the alleged conspiracy was the use of 5% of the project cost to pay bribes.  More specifically, under oath, an FBI undeceiver agent testified to the following regarding the substance of the destroyed calls:

| Counsel: | What you were investigating was bribery in foreign countries, correct? |
|---|---|
| Agent: | Yes. |
| Counsel: | Okay. Mr. Boncy had said something that was completely different than the heart of your investigation, correct? |
| Agent: | He said something different. That's what I can testify to. |

(D.E. 208, p. 147, Transcript of Day 5.)  This was born out further when, according to a separate call, the UC noted in the destroyed calls, "we talked about the 5% for social programs . . . [and Mr. Boncy] gave me a different answer about what that 5% for social programs is for than when you and I talked, and I don't know who to believe."[4]   In fact, at the charging conference in the first trial of this matter, the Court noted that Mr. Boncy had made a colorable claim that the

---

[4] See also D.E. 216, p. 37, Transcript of Evidentiary Hearing as to Joseph Baptiste, Roger Richard Boncy held on June 7, 2019 (Counsel: "And on those calls he said something different than what was the heart of the charged conspiracy, correct?" Agent: "He said something different, yes, sir.")

destroyed calls were exculpatory.   (D.E. 209, p. 220, Transcript of Jury Trial Day Six as to Joseph Baptiste, Roger Richard Boncy held on June 17, 2019.)  The evidence was indeed exculpatory – and the government knew it at the time.   These recordings are irreplaceable evidence of Mr. Boncy's lack of understanding and thus, the absence of a conspiracy.   And the undercover's testimony regarding the destroyed calls is no replacement for this evidence. All he remembers is that Boncy was saying something "different."  Other than that, he has, at best, a weak recollection of the substance of the calls.  (*E.g.*, D.E. 216, p. 27-31, Transcript of Evidentiary Hearing as to Joseph Baptiste, Roger Richard Boncy held on June 7, 2019.)  And, of course, there are no notes.

Just as the calls themselves were exculpatory, so too is the now-lost disk of the recovered files from the allegedly damaged hard drive or at least they were "potentially useful." *Youngblood*, 488 U.S. at 58.  First, this disk according to the government's most recent letter, was made up of files that "fell within the relevant time period or were the relevant file type." The files on the disk had been identified in February 2019 as potentially related to the prosecution of Mr. Boncy. They were collected at the direction of the AUSA.[5] And they were collected at a time that counsel's first discovery demand was pending. At a minimum, there were Rule 16 evidence. And, if they indeed contained even a small portion of the two destroyed recordings – they would be exculpatory. The very existence of this disk, which was made during the time that Mr. Boncy was under indictment, pending trial, and subject to the rules of discovery, was not revealed to Mr. Boncy until the June 7, 2019 hearing. The disk was a product, apparently, of the DOJ's attempt to determine what happened to the destroyed calls. Just as malfunctioning recordings are produced,

---

[5] It is counsel's understanding that the DOJ (as compared to the FBI) was never made aware that the disk had been destroyed.  It is also counsel's understanding that the assigned prosecutor or prosecutors had directed the search for the lost calls, and the hard drive that would have contained the calls.  The FBI's destruction, loss, misplacement of the disk (and hard drive) was not the product or result of any prosecutor's direction or command or knowing involvement.  Rather, it appears, based on what is now known, that the FBI alone destroyed the potentially useful evidence without knowledge of the any assigned prosecutor.  Of course, regardless, the FBI's conduct is attributable to the United States.

this disk should have been produced to Mr. Boncy in the first instance – regardless of the FBI's claims regarding its contents.

Second, at various times, the disk and the alleged work by the FBI to collect the disk contents have been offered as some sort of evidence of good-faith mistake. But, now, Mr. Boncy cannot challenge that position. Instead, he is left with the claim of government witnesses that there was nothing intelligible on the files on the disk. As the Court noted at the recent status hearing, Mr. Boncy should not be forced to rely on the government's representation as to the disk's contents.

Third, as the Court noted at the recent status conference, Mr. Boncy should be able to allow his own experts take a look at the disk and review its contents.  This is now denied.  He can't look at the actual files, he can't have an expert examine the files, he can't examine their properties.  All of that has been denied because, as the DOJ states, the "the disk did not contain evidence or content."  That is not true.  The disk had 172 files that had been downloaded from a computer that were identified as relevant and needed examination.  It indeed had content.

Mr. Boncy has once again been denied key, material, exculpatory evidence because of the government's conduct.  The importance of this disk and the information therein has been known for a long time and this disk should have been maintained in a manner that reflects its import. The idea that two weeks before trial it has gone missing, and we should all just "move on" severely abrogates Mr. Boncy's constitutional rights. This conduct cannot be condoned, and the case should be dismissed.  At a bare minimum, an evidentiary hearing is necessary.

_____

## Conclusion

Based on the foregoing, Mr. Boncy respectfully requests that the Court (1) grant this motion to dismiss the charge against Mr. Boncy; or (2) in the alternative, schedule an evidentiary hearing, where, at a minimum FBI Employee 1, FBI Employee 2, and the case agent are required to attend and testify;[6] and (3) order any other just and fair relief the Court deems appropriate.

Dated: June 17, 2022

Respectfully submitted,

GREENBERG TRAURIG, LLP

/s/ Jed Dwyer
Jared E. Dwyer
Admitted *pro hac vice*
Greenberg Traurig, LLP
333 SE 2d Avenue
Miami, FL  33131
Tel:  (305)579-0564
Fax: (305) 579-0717

/s/ Mark A. Berthiaume
Mark A. Berthiaume
BBO # 041715
Greenberg Traurig, LLP
One International
Place Boston, MA
02110
Tel:  (617) 310-6007
Fax: (617) 310-6001

---

[6] Based on the government's disclosure, it appears that the government has spoken with FBI Employee 1 and 2.  As noted, FBI employee 2 is a current FBI employee.  When Mr. Boncy asked for FBI Employee 2 to be made available for the hearing and trial, the government responded by directing his counsel to file the appropriate *Touhy* paperwork. Should such be necessary, counsel will do so, although *Touhy* requirements are unconstitutional, *United States v. Bahamande*, 445 F.3d 1225, 1228-20 (9th Cir. 2006) and unnecessary where the government is a party, *Alexander v. F.B.I.*, 186 F.R.D. 66, 69 (D.C. Cir. 1998).

## RULE 7.1(a)(2) CERTIFICATE

I, Jed Dwyer hereby certify, based on conversations with government counsel, that the United States opposes the relief sought in this motion

*/s/ Jed Dwyer*

Jared E. Dwyer

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicted as non-registered participants.

*/s/ Jed Dwyer*

Jared E. Dwyer

12